UNITED STATES of America,
Plaintiff–Appellant,

v.

NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY,
Defendant–Appellee,

The Shipbuilders Council of America,
Amicus Curiae.

No. 88–3520.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1988.

Decided Dec. 5, 1988.

Peter Rolf Maier (John R. Bolton, Asst. Atty. Gen., Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., Leonard Schaitman, Appellate Staff, Civil Div., U.S. Dept. of Justice; John J. Quill, Kirk Moberley, Defense Contract Audit Agency, Washington, D.C., on brief), for plaintiff-appellant.

John G. DeGooyer (K. Martin Worthy, Maureen Duignan, Theodore A. Howard, Helen Marie Lardner, Hopkins, Sutter, Hamel & Park, Washington, D.C., on brief), for defendant-appellee.

Before MURNAGHAN, WILKINSON and WILKINS, Circuit Judges.

WILKINSON, Circuit Judge:

This case concerns the scope of the subpoena power of the Defense Contract Audit Agency. DCAA seeks to subpoena the federal income tax returns, financial statements, and supporting schedules of Newport News Shipbuilding and Dry Dock Company, a large defense contractor. Because the order of the district court denying enforcement of the subpoena unduly restricts DCAA's statutory subpoena power, we reverse the order and remand for further proceedings consistent with this opinion.

## I.

Newport News Shipbuilding and Dry Dock Company (NNS) is a major defense contractor. A large percentage of NNS's work is performed for the United States government; its business includes the design, construction, repair, and overhaul of vessels for the United States Navy. Much of its work for the Navy is performed under "cost" or "cost-plus" contracts, in which the contract price is based on NNS's cost or its cost plus a fixed fee.

DCAA was established in 1965 as a separate agency in the Department of Defense. DCAA's function is to assist DOD with audits during the negotiation, administration, and settlement of defense contracts. DCAA also provides accounting and financial advisory services to DOD entities responsible for procurement and government contract administration.

DCAA audits defense contractors' books and records in order to establish what constitutes an allowable cost under a particular government contract and federal procurement regulations. See Federal Acquisition Regulation §§ 31.201–2, 31.201–3 & 31.201–4, 48 C.F.R. §§ 31.201–2, 31.201–3 & 31.201–4 (1987). A contractor's total reimbursable cost is the sum of its allowable "direct" and "indirect" costs. A direct cost is one that can be identified with a particular contract. Indirect costs, such as general and administrative overhead, are those that are identified with two or more contracts. The allocation of indirect costs to particular contracts is often a complex process involving sophisticated cost accounting techniques. DCAA performs detailed analyses of a contractor's claimed costs in order to verify their accuracy and to identify unallowable costs. To assist in its responsibilities, DCAA is authorized by statute to inspect the plant and subpoena the books and records of a defense contractor. It is the scope of DCAA's subpoena power that is at issue here.

On February 11, 1987, DCAA issued a subpoena duces tecum to NNS pursuant to 10 U.S.C. § 2313(d) demanding:

> Trial balance, adjusting entries, segment financial workpapers, consolidating entries, formal consolidated balance sheet and income statement, Federal income tax return, Virginia income tax return and any other supporting schedules, documentation or correspondence related to preparation and issuance of financial statements or preparation or payments of any tax liabilities on a Federal, state or local level for the period 1 January 1983 to the present [.]

NNS furnished the requested state tax returns to DCAA but refused to provide the remainder of the subpoenaed materials. NNS instead filed a declaratory judgment action to have the subpoena declared unlawful and unenforceable. The government moved to dismiss NNS's suit and subsequently petitioned for summary enforcement of the DCAA subpoena. On December 23, 1987, the district court denied enforcement of the subpoena, holding that the subpoenaed materials were not related to cost or pricing data connected to a particular contract, and did not form the basis for costs claimed, or anticipated, in connection with particular contracts. According to the district court, DCAA did not need the subpoenaed materials in order to properly perform its auditing function. The government appeals from this ruling.

Subsequent to the district court's refusal to enforce DCAA's subpoena, this court announced its decision in *United States v. Newport News Shipbuilding & Dry Dock Co.*, 837 F.2d 162 (4th Cir.1988) (*"Newport News I"*), another subpoena enforcement dispute involving these parties. In that case, DCAA subpoenaed audits conducted by NNS's internal audit department. We affirmed the district court's refusal to enforce the subpoena and held that DCAA's statutory subpoena power extends to objective cost information related to government contracts, but not to all corporate materials such as the internal, subjective evaluations at issue there.

## II.

DCAA's statutory subpoena power is set forth in 10 U.S.C. § 2313(d)(1), which reads:

> The Director of the Defense Contract Audit Agency (or any successor agency) may require by subpoena the production of books, documents, papers, or records of a contractor, access to which is provided to the Secretary of Defense by [§ 2313(a)] or by section 2306a of this title.

By its terms, § 2313(d)(1) authorizes DCAA to subpoena only materials to which it has access under 10 U.S.C. § 2313(a) or 10 U.S.C. § 2306a. Resolution of this case therefore depends on the construction of these two statutory provisions. *See Newport News I*, 837 F.2d at 166 n. 2.

Sections 2313(a) and 2306a provide in pertinent part:

§ 2313.

(a) An agency named in section 2303 of this title is entitled, through an authorized representative, to inspect the plant and audit the books and records of—

(1) a contractor performing a cost or cost-plus-a-fixed-fee contract made by that agency under this chapter; and

(2) a subcontractor performing any subcontract under a cost or cost-plus-a-fixed-fee contract made by that agency under this chapter.

§ 2306a(f).

(1) For the purpose of evaluating the accuracy, completeness, and currency of cost or pricing data required to be submitted by this section with respect to a contract or subcontract, the head of the agency ... shall have the right to examine all records of the contractor or subcontractor related to—

(A) the proposal for the contract or subcontract;

(B) the discussions conducted on the proposal;

(C) pricing of the contract or subcontract; or

(D) performance of the contract or subcontract.

(3) In this subsection, the term "records" includes books, documents, and other data.

It is pursuant to these statutes that DCAA issued the subpoena giving rise to this dispute.*

## III.

■ NNS asserts that DCAA may subpoena materials only if they are used as a basis for determining contract costs or are relied upon in the process of allocating costs to a specific contract. This argument suggests that only cost or pricing data used to calculate costs charged to the government are reviewable by DCAA. Based on our review of the relevant statutes, we reject such a narrow construction of DCAA's auditing function and subpoena authority. We hold that 10 U.S.C. § 2313(a) and 10 U.S.C. § 2306a(f) provide DCAA access to objective factual materials useful in verifying the actual costs, including general and administrative overhead costs, charged by companies performing cost-type contracts for the government.

The language of 10 U.S.C. § 2313(a) and 10 U.S.C. § 2306a(f) supports this construction of DCAA's statutory subpoena authority. Section 2313(a), for example, permits DCAA auditors to "inspect the plant and audit the books and records" of a company performing a cost-type contract for the government. A plain reading of the statute suggests that DCAA may review a contractor's financial and cost data. Similarly, § 2306a(f)(1) provides DCAA access to all "records" related to the negotiation, administration, or settlement of cost-type contracts where such records are necessary "[f]or the purpose of evaluating the accuracy, completeness, and currency of cost or pricing data" submitted to the government by a defense contractor. The term "records" is defined to include "books, documents, and other data," 10 U.S.C. § 2306a(f)(3), and it is plain from the face of the statute that DCAA enjoys access to objective factual information concerning contract costs. No language in the statute limits DCAA's subpoena authority to data actually submitted to the agency or actually relied upon by the contractor in determining contract costs. In fact, DCAA's statutory task of "evaluating the accuracy, completeness, and currency" of submitted data suggests that DCAA is not confined solely to that data in performing its auditing function.

The statutory language, however, is not so conclusive that we can forego an analysis of "the policies underlying the statutory provision to determine its proper scope." *Bowsher v. Merck & Co.,* 460 U.S. 824, 831 n. 7, 103 S.Ct. 1587, 1592 n. 7, 75 L.Ed.2d 580 (1983). The legislative histories of §§ 2313(a) and 2306a(f) reveal Congress' intent to provide DCAA access to objective financial data to verify the actual costs incurred in the performance of cost-type contracts. Section 2313(a) was enacted as part of the Armed Services Procurement Act of 1947, which was a comprehensive revision and restatement of military procurement law. Pub.L. No. 80–413, 62 Stat. 21 (February 19, 1948), *reprinted in* 1948 U.S. Code Cong. Serv. 20. *See also* S.Rep. No. 571, 80th Cong., 1st Sess. (1947), *reprinted in* 1948 U.S. Code Cong.Serv. 1048, 1049. What is now codified as § 2313(a) was introduced as a floor amendment by Senator Byrd of Virginia. Senator Byrd's statements on the floor demonstrate that the access-to-records amendment was added in order to prevent defense procurement fraud. 94 Cong.Rec. 79 (1948). His remarks, as those of the amendment's sponsor, are "an authoritative guide" to its construction, *North Haven Bd. of Education v. Bell,* 456 U.S. 512, 526–27, 102 S.Ct. 1912, 1920–21, 72 L.Ed.2d 299 (1982), and illustrate that § 2313(a) was intended to enable the government to determine whether cost charges claimed by defense contractors were actually incurred. *See Newport News I,* 837 F.2d at 166–67 (discussion of the legislative history of § 2313(a)).

The legislative history of § 2306a(f) reveals a similar congressional intent. What

---

* 10 U.S.C. § 2306(f)(5) was the predecessor statute to 10 U.S.C. § 2306a(f). Congress recodified § 2306(f)(5) in 1986, but the statute's content remains unchanged.

is now § 2306a(f) originally was enacted in 1968 as part of the Truth in Negotiations Act, Pub.L. No. 90–512, 82 Stat. 863 (September 25, 1968), *reprinted in* 1968 U.S. Code Cong. Serv. & Admin. News 1003. The Act gave the government the right to examine a defense contractor's records, documents, and other data in order to verify cost and pricing information submitted during the contracting process. *See* S.Rep. No. 1506, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S. Code Cong. & Admin. News 3589. Sponsors and supporters of the legislation believed that a "post-award" audit, based on actual contract performance, was the best means of verifying whether cost charges submitted by defense contractors were accurate, current, and complete. Senator Proxmire of Wisconsin, the Senate sponsor of the bill, stated that congressional action on this access-to-records provision made it "unmistakably clear that the Government has full authority to conduct postaudit investigations of a contractor's cost data" in order to verify costs charged to the government. 114 Cong.Rec. 26333 (1968). Representative Minshall of Ohio, the House sponsor of the bill, stated that the legislation would provide for government audits of a defense contractor's "financial records." 114 Cong. Rec. 11783 (1968). Senator Young of Ohio, who supported the legislation on the floor of the Senate, stated that the access-to-records provision authorized government auditors "to make full fledged postaudits of all financial records of defense contractors" in order to determine whether the government had been overcharged. 114 Cong.Rec. 26331 (1968).

DOD regulations implementing §§ 2313(a) and 2306a(f) reinforce our construction of DCAA's statutory subpoena power. Federal Acquisition Regulation § 15.106–2, 48 C.F.R. § 15.106–2 (1987), which specifically implements 10 U.S.C. § 2313(a), requires that defense contracts contain a clause guaranteeing DCAA access to certain documents. This standard contract clause provides in relevant part that:

> representatives of the Contracting Officer shall have the right to examine and

audit—books, records, documents, and other evidence and accounting procedures and practices, sufficient to reflect properly all costs claimed to have been incurred or anticipated to be incurred in performing this contract.

Federal Acquisition Regulation § 52.215–2(a), 48 C.F.R. § 52.215–2(a) (1987). Objective data "sufficient to reflect properly all costs claimed" are reviewable by the government, *id.*, and are therefore within the scope of DCAA's statutory subpoena authority. In addition, if a defense contractor is required to submit cost or pricing data to the government, DCAA has the right:

> to examine and audit all books, records, documents, and other data of the Contractor (including computations and projections) related to negotiating, pricing, or performing the contract ..., in order to evaluate the accuracy, completeness, and currency of the cost or pricing data.

Federal Acquisition Regulation § 52.215–2(b), 48 C.F.R. § 52.215–2(b) (1987). DCAA's right of examination is not limited to cost or pricing data alone; it extends "to all documents necessary to permit adequate evaluation" of cost or pricing data submitted to the government. *Id.* *See also* Federal Acquisition Regulation § 15.106–2, 48 C.F.R. § 15.106–2 (1987) (DOD regulation specifically implementing 10 U.S.C. § 2306a(f)).

In sum, the scope of DCAA's statutory subpoena authority is not limited in the manner NNS suggests. Nowhere in § 2313(a) or § 2306a is DCAA's access to corporate records and documents restricted to those materials actually submitted or relied upon by contractors in calculating their claimed costs. The singular purpose of both statutory grants of subpoena authority was to enable DCAA to evaluate and verify the costs claimed by defense contractors. That purpose is not served, in our judgment, by the most cramped and restrictive reading possible of the statutory text. DCAA may thus subpoena objective factual information for the purpose of verifying costs, including general and administrative overhead costs, associated with con-

tracts being audited by DCAA. The agency performs an important function in the defense procurement system: cost auditing for the purpose of assisting in the negotiation and administration of defense contracts. 32 C.F.R. § 357.2 (1987). Cost verification data therefore is the proper subject of a DCAA subpoena. Sections 2313(a) and 2306a(f)(1) are intended to provide DCAA access to objective financial and cost information, contained in a defense contractor's books, records, and other documents, that reflects upon the accuracy of cost charges submitted to the government.

## IV.

■ The scope of DCAA's statutory subpoena authority also must be read against a practical understanding of the defense procurement process and sound auditing practice. Reviewed in this light, we disagree with the district court's conclusion that NNS's federal income tax returns, financial statements, and supporting schedules must fall outside the scope of DCAA's subpoena power.

We have noted that DCAA enjoys access to materials needed for factual verification of general and administrative overhead costs. *Newport News I*, 837 F.2d at 166. These costs are "indirect" costs and, by definition, cannot be identified with a specific contract. Indirect costs are, however, an allowable component of a contractor's total cost, Federal Acquisition Regulation §§ 31.201–1 & 31.203, 48 C.F.R. §§ 31.-201–1 & 31.203 (1987), and as such, a defense contractor may allocate them to particular contracts and claim reimbursement for them from the government. DCAA therefore may subpoena objective factual records that reflect upon the accuracy of overhead cost charges submitted to the government.

Federal procurement regulations, for example, allow reimbursement for the reasonable cost of renting or leasing real or personal property required for the performance of a government contract, such as a warehouse for storing contract materials. Federal Acquisition Regulation § 31.205–36, 48 C.F.R. § 31.205–36 (1987).

A defense contractor, however, is entitled to reimbursement only for that part of the warehouse dedicated to the performance of that particular contract. If the defense contractor were to sublease a portion of its warehouse space to an entity unrelated to that particular contract, the overhead cost for the warehouse charged to the government must be offset by any rental income received by the contractor. By reviewing the contractor's financial statements, which should include entries for such rental income, DCAA is better able to verify whether the contractor has properly computed and allocated its overhead costs as required by the contract and federal procurement regulations. The contractor's financial statements afford DCAA a useful method of corroborating overhead cost information submitted to the government.

More generally, a defense contractor's federal tax returns, financial statements, and supporting schedules may be subpoenaed to the extent that they assist DCAA in verifying costs charged under cost-type contracts. It is an essential element of sound auditing practice to obtain sufficient corroborative information to satisfy the auditor that other information upon which he relies is accurate and complete. This principle is, as we have noted, recognized in 10 U.S.C. § 2306a(f)(1) which authorizes DCAA to subpoena books, documents, and other objective factual materials that can be used to evaluate the "accuracy, completeness, and currency of cost or pricing data" submitted by a defense contractor.

A defense contractor, for example, must identify and exclude from any claim for government reimbursement all unallowable costs, such as certain bad debt, interest, lobbying, entertainment, public relations, and advertising expenses. Federal Acquisition Regulation § 31.201–6, 48 C.F.R. § 31.201–6 (1987). *See also* Federal Acquisition Regulation § 31.205, 48 C.F.R. § 31.205 (1987) ("Selected Costs"). Federal procurement regulations provide DCAA access to corporate materials in order to verify whether defense contractors have complied with this obligation. Federal Acquisition Regulation § 52.230–3, 48 C.F.R.

§ 52.230–3 (1987). A contractor's corporate tax return, for example, would include an entry for advertising expenses because they may be deductible for federal tax purposes. The tax return therefore may be helpful in verifying whether the contractor has identified and excluded its unallowable advertising expenses.

Similarly, the profit realized from a contractor's purchase of materials from a division or subsidiary cannot ordinarily be included in the allowable costs charged the government. Federal Acquisition Regulation § 31.205–26(e), 48 C.F.R. § 31.205–26(e) (1987). The government contends that cost entries submitted to it may not reveal the amount of profit hidden in the purchase price or the relationship between the companies involved in the transaction. A contractor's tax return, on the other hand, may well disclose the relevant corporate affiliations.

In short, we disagree with the district court's conclusion that the subpoenaed materials are not necessary for DCAA to properly perform its statutory function. First, many of these financial statements are in a readily usable form. Second, some of these statements have a high degree of reliability because they are independently reviewed and the contractor is subject to serious sanctions for supplying incorrect information. *See, e.g.*, 26 U.S.C. §§ 7201–07 (criminal and civil penalties for supplying incorrect or incomplete federal tax information). Third, a contractor's tax returns and financial statements bear upon the consistency of its costing methods and the reconcilability of costs claimed for tax purposes and costs claimed in contract billings to the government. Fourth, access to these materials may allow DCAA to verify the accuracy of cost information submitted by NNS; it may allow DCAA to corroborate NNS's computation and allocation of direct and indirect costs to particular government contracts. All of these factors are relevant to DCAA's auditing mission. Although an agency cannot define the scope of its statutory authority, it is entitled to some discretion in the performance of the task with which Congress has entrusted it; otherwise, frustration of the

statutory objectives would result. *See United States v. Westinghouse Electric Corp.*, 788 F.2d 164, 171 (3d Cir.1986).

## V.

■ NNS contends, finally, that the materials subpoenaed by DCAA contain proprietary and business-sensitive information which should remain confidential. To some extent, of course, every auditor seeks information which the subject of the audit regards as confidential, and the audits here are no exception. DCAA's statutory subpoena authority, however, does not confer a privilege of confidentiality with respect to objective financial and cost information. Like other private firms, defense contractors have an interest in maintaining the confidentiality of their corporate materials. *Newport News I*, 837 F.2d at 170. But a contractor's interest in maintaining the confidentiality of these materials cannot outweigh, in all instances, DCAA's interest in reviewing them. By claiming reimbursement for its contract costs, a defense contractor represents that the costs are reasonable and allocable to a particular contract. DCAA is granted access to defense contractors' books and records; it does not, however, disclose these materials publicly or to the defense contractors' competitors. *See, e.g.*, 32 C.F.R. §§ 290.20–290.29 (1987) ("Availability of DCAA records"); 32 C.F.R. § 286.13(a)(4) (1987) (DOD Freedom of Information Act exemptions).

NNS's claim of confidentiality was more persuasive on the facts of our earlier decision. There we held that the scope of DCAA's statutory subpoena authority did not extend to the *subjective* assessments of NNS's internal audit staff. *Newport News I*, 837 F.2d at 170. We recognized that internal audits may "rely for their effectiveness on the candor that confidentiality allows." *Id.* In contrast, the subpoena at issue here requests production of *objective* financial and cost data and summaries, not the subjective work product of NNS's internal auditors. To the extent that the materials subpoenaed here would assist DCAA in verifying and evaluating the cost claims of the contractor, they are within the con-

templation of DCAA's statutory subpoena authority.

## VI.

The district court took too restrictive a view of DCAA's access to defense contractor records. Its blanket refusal to enforce the subpoena impaired DCAA's statutory subpoena power. We are unable to examine each requested document in light of the relevant statutory purposes. We therefore reverse the judgment of the district court and remand for review of DCAA's individual requests in light of the general standards of agency subpoena power and the particular principles set forth herein.

The order of the district court denying enforcement of the subpoena is hereby

REVERSED AND REMANDED.