UNITED STATES of America, Petitioner,

v.

NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Respondent.

Misc. No. 87–29–NN.

United States District Court, E.D. Virginia, Norfolk Division.

July 27, 1989.

Richard K. Willard, Asst. Atty. Gen., Henry E. Hudson, U.S. Atty. by Michael A. Rhine, Asst. U.S. Atty., Norfolk, Va., Surell Brady and David M. Souders, U.S. Dept. of Justice Civ. Div., Washington, D.C., John J. Quill & Kirk Moberley, Defense Contract Audit Agency, Alexandria, Va., for petitioner.

Shannon T. Mason, Jr., Newport News, Va., K. Martin Worthy, John G. DeGooyer, Maureen Duignan, Theodore A. Howard and Helen Marie Lardner, Hamel & Park, Washington, D.C., for respondent.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

This matter comes before the Court on the government's petition for summary enforcement of a subpoena duces tecum served on the Newport News Shipbuilding and Dry Dock Company (NNS) by the Defense Contract Audit Agency (DCAA).

NNS is a major defense contractor whose business includes the design, construction, repair and overhaul of vessels for the United States Navy. Much of its work for the Navy is performed under "cost" or "cost-plus" contracts, in which the contract price is based on NNS's cost or its cost plus a fixed fee.

DCAA is an agency of the Department of Defense (DOD) that, among other things, assists DOD with audits during the negotiation, administration and settlement of defense contracts. DCAA audits defense contractors' books and records in order to establish what constitutes an allowable cost under a particular government contract and federal procurement regulations. It performs detailed analyses of a contractor's claimed costs in order to verify their accuracy and to identify unallowable costs. To assist in its responsibilities, DCAA is authorized by statute to inspect the plant and subpoena the books and records of a defense contractor.

On February 11, 1987, DCAA issued a subpoena to NNS pursuant to 10 U.S.C. § 2313(d) demanding:

Trial balance, adjusting entries, segment financial workpapers, consolidating entries, formal consolidated balance sheet and income statement, Federal income tax return, Virginia income tax return and any other supporting schedules, documentation or correspondence related to preparation and issuance of financial statements or preparation or payments of any tax liabilities on a Federal, state or local level for the period 1 January 1983 to the present.

NNS furnished the requested state tax returns to DCAA but refused to provide the remainder of the subpoenaed materials. NNS instead filed a declaratory judgment action to have the subpoena declared unlawful and unenforceable. The government moved to dismiss NNS's suit and subsequently petitioned for summary enforcement of the DCAA subpoena. On December 23, 1987, this Court denied enforcement of the subpoena. DCAA appealed, and on December 5, 1988, the United States Court of Appeals for the Fourth Circuit reversed this Court's ruling and remanded the matter for further consideration of the individual documents requested. *United States v. Newport News Shipbuilding & Dry Dock Co.*, 862 F.2d 464 (4th Cir.1988) ("*Newport News II* ").

At the request of the Court, NNS and DCAA entered into negotiations in an attempt to resolve the dispute. Newport News produced a considerable number of documents and records. However, it has continued to withhold certain documents that it asserts are outside DCAA's subpoena authority. The first category of documents contains workpapers for federal tax returns from 1983 to 1987, consisting of:

—Computations of Taxable Income on Nuclear Refueling

—Computations of Taxable Income on Shipbuilding Contracts

—Taxable Income on Delivered Jumbos

—Details of Estimated Operating Profit from Naval Refueling and Overhaul Contracts

—Computations of Estimated Profits on Shipbuilding Contracts

The second category contains the following profit and loss workpapers from the 4th Quarter Profit and Loss estimates file for financial statements from 1983 through 1987:

—Computations of Estimated Profits on Shipbuilding Contracts

—Details of Estimated Operating Profit from Naval Refueling and Overhaul Contracts

—Details of Estimated Operating Profit from Post Shakedown Availability Contracts

—Details of Estimated Operating Profit from Government Design Contracts

—Estimated Operating Profit from Commercial Ship Repair

—Details of Estimated Operating Profit from Government Industrial Products

The parties disagree sharply about the proper interpretation of the Fourth Circuit's opinions in this case and in an earlier subpoena dispute between them. *United States v. Newport News Shipbuilding and Dry Dock Co.*, 837 F.2d 162 (4th Cir.1988) (*"Newport News I"*).

In *Newport News I*, the Fourth Circuit affirmed this Court's ruling that the government was not entitled to the company's internal audit materials, which contained the staff's subjective evaluation of various areas of the company's operations and suggestions for improvements. The Court held that DCAA's statutory subpoena authority "should be construed principally to provide access to cost information related to particular contracts." 837 F.2d at 167. NNS's internal audits were beyond the scope of DCAA's subpoena power because they concerned not the costs related to particular contracts but the performance of NNS departments over the course of many contracts. *Id.* at 168–69. While DCAA has access to the same original cost information that NNS internal auditors use, the Court held, it may not "demand access to the analysis contained in the con-

fidential work product of NNS's own audit staff." *Id.* at 169–70.

In *Newport News II*, involving the present subpoena, the Fourth Circuit held that DCAA was entitled to review a broad range of "objective factual materials useful in verifying the [company's] actual costs." 862 F.2d at 467. Such materials include income tax returns, financial statements, and supporting schedules, "to the extent that they assist DCAA in verifying costs charged under cost-type contracts." *Id.* at 469. The Court remanded the case to allow this Court to examine the particular documents requested "in light of the general standards of agency subpoena power and the particular principles set forth" in its opinion. *Id.* at 471.

NNS asserts that the withheld documents reflect "various estimates, assumptions and projections of future contract performance and cost trends" and that these materials are purely "subjective." NNS Brief in Opposition at 7. NNS argues that, under the Fourth Circuit's rulings, DCAA's power does not go beyond objective and factual materials to reach subjective, judgmental documents such as these workpapers. In the company's view, the Fourth Circuit has established a bright-line test, in which documents that contain subjective judgments are not subject to DCAA's access-to-records authority.[1]

NNS also argues that the documents in question are not within DCAA's subpoena power because they do not relate to the negotiation, pricing, performance or billing of its government contracts. The workpapers

reflect estimates, assumptions and projections of the [Financial Reporting] Department's personnel concerning subjects such as contract completion dates, manhours and material expenditures likely to be needed in the future and the estimated costs associated therewith, future labor rates, future overhead expenditures and rates, future escalation factors and

---

1. NNS argues that the government has previously advocated a strict subjective/objective test and that its current position reflects an "about-face" that is impermissible under principles of judicial and equitable estoppel. The Court finds no evidence that the government has taken inconsistent positions during this litigation or has otherwise behaved improperly and accordingly rejects this argument.

disallowance rates, and future cost-of-facilities-capital ("COFC") rates and amounts. *Id.* at 19. These documents, the company states, are used primarily by management personnel to prepare the company's quarterly estimates of profit and loss. *Id.* According to NNS's controller, the Financial Reporting Department receives information, including estimates, assumptions and projections, that is prepared by other departments in the company and is provided to DCAA. These figures are used as "the starting point" for the department; the financial reports may contain different figures, largely to reflect principles of conservatism in financial reporting. Affidavit of Matthew W. Appel at 3–5. Because the workpapers are used for different purposes than the materials provided to the government, NNS argues, they bear no relation to the negotiation, pricing or performance of the government contracts and are not necessary or useful for DCAA.

The government asserts that the documents are within DCAA's subpoena authority and are relevant to its auditing functions. It argues that the use of a sharp subjective/objective distinction is overly simplistic and ignores the broader principles governing an agency's subpoena power. In its view, subjectivity alone does not confer protection on the documents; rather, the test is whether the information is related to the costs of government contracts. Supplemental Memorandum of the United States at 12. The government asserts that the figures in the workpapers represent NNS's most current projections of a variety of costs, that they are highly reliable and that they are necessary for DCAA to verify and corroborate information provided to the government in pricing proposals and other materials.

DCAA states that it recognizes that materials prepared to support financial statements may contain different estimates of future costs and profits than material provided to the government in the contracting process. Declaration of William J. Sharkey, Assistant Director, Policy and Plans, DCAA, at 5. However, the government argues that "the use of different estimates may or may not be warranted," *id.*, and that it is entitled to determine where differences exist and to seek a satisfactory explanation of the inconsistencies. Moreover, the government notes, NNS does not dispute that the estimates contained in the workpapers are generated on a contract-by-contract basis for the company's long-term shipbuilding contracts. Therefore, the documents are related to the pricing, performance or costs of government contracts and should be produced.

The government is correct that this Court must examine this case with a view to the broad principles of law governing administrative subpoenas. *Newport News II*, 862 F.2d at 471. Generally, an agency's subpoena is to be enforced "if (1) the inquiry is within the authority of the agency and is for a proper purpose; (2) the matter requested is reasonably relevant to the inquiry; and (3) the demand is not unreasonably burdensome or broad." *Newport News I*, 837 F.2d at 162.

DCAA is empowered by statute to "inspect and audit the books and records of a contractor performing a cost or cost-plus-a-fixed fee contract." 10 U.S.C. § 2313(a). DCAA is also granted access to "all books, records, documents, and other data of the contractor or subcontractor related to the proposal for the contract, the discussions conducted on the proposal, pricing or performance of the contract or subcontract" where such materials are necessary "for the purpose of evaluating the accuracy, completeness, and currency of cost or pricing data." *Id.* § 2306a(f).[2] NNS has previously argued in this case that DCAA may subpoena only those materials used as a basis for determining contract costs or relied upon in the process of allocating costs to a specific contract. However, the Fourth Circuit has specifically rejected "such a narrow construction of DCAA's

---

**2.** This statute was formerly codified at 10 U.S.C. § 2306(f)(5) and is referred to as such in *Newport News I.*

auditing function and subpoena authority," holding that DCAA has access to "objective factual material *useful in verifying the actual costs* ... charged by companies performing cost-type contracts." *Newport News II*, 862 F.2d at 467 (emphasis added). "The singular purpose of both statutory grants of subpoena authority was to enable DCAA to *evaluate and verify* the costs claimed by defense contractors." *Id.* at 468 (emphasis added).

In *Newport News II*, the Court held that DCAA may subpoena "objective factual records that reflect upon the accuracy of overhead cost charges submitted to the government" and may subpoena documents such as tax returns, financial statements and supporting schedules "to the extent that they assist DCAA in verifying costs charged." *Id.* at 469.

The Fourth Circuit found support for its view in DOD's regulations implementing Sections 2313(a) and 2306a(f). A standard DOD contract clause gives auditors the right "to examine and audit—books, records, documents, and other evidence and accounting procedures and practices, sufficient to reflect properly all costs claimed to have been incurred or anticipated to be incurred." Federal Acquisition Regulation (FAR) § 52.215–2(a), 48 C.F.R. § 52.215–2(a) (1988). Similarly, DCAA has the right "to examine and audit all books, records, documents, and other data of the contractor (*including computations and projections*) related to negotiating, pricing or performing the contract ... in order to evaluate the accuracy, completeness, and currency of the cost or pricing data submitted by a contractor." FAR § 52.215–2(b), 48 C.F.R. § 52.215–2(b) (emphasis added). NNS has made no argument that these regulations are outside DOD's authority or are otherwise invalid.

The statutes and regulations, as interpreted by the Fourth Circuit, indicate that the workpapers are within DCAA's access-to-records authority. DCAA may examine "the books and records of a contractor," 10

U.S.C. § 2313(a), and "*all* books, records, documents, and other data" to "evaluat[e] the accuracy, completeness, and currency of cost or pricing data." *Id.* § 2306a(f) (emphasis added). The applicable regulations specifically include "computations and projections" in the list of materials that DCAA may examine "to evaluate the accuracy, completeness, and currency of [the contractor's] cost or pricing data." FAR § 52.215–2(b), 48 C.F.R. § 52.215–2(b).

The Fourth Circuit's opinion in this case also reflects a recognition that "[t]he scope of DCAA's statutory subpoena authority ... must be read against a practical understanding of the defense procurement process and sound auditing practice." *Newport News II*, 862 F.2d at 469. NNS concedes that it routinely discloses to DCAA information in the form of estimates and projections to allow the agency to perform its audits and evaluate the company's cost and pricing data. *See* Affidavit of Matthew W. Appel at 5. The workpapers at issue here concern major, long-term projects. Clearly, estimates and projections must be used in the ongoing process of negotiation and payment of contracts that involve large-scale work over a period of years.[3] To remove items from DCAA's subpoena authority merely because they contain estimates and projections fails to take into account the importance of such information to government contracts like these.

The Court also finds persuasive the government's argument that sound account practices indicate that DCAA should be granted access to the workpapers. For example, the auditing standards of the American Institute of Certified Public Accountants provide that an auditor must obtain sufficient competent evidential matter to support an opinion regarding financial statements under examination. *See* Declaration of William J. Sharkey at 1–12. "It is an essential element of sound auditing practice to obtain sufficient corroborative information to satisfy the auditor that oth-

---

**3.** As counsel for the government pointed out at oral argument, DOD is primarily concerned with verifying the estimated cost to complete the various contracts; these estimates are used at "the highest levels of government" for DOD budget planning and appropriations.

er information on which he relies is accurate and complete." *Newport News II,* 862 F.2d at 469. The Court finds that the documents at issue here, workpapers that support financial statements and tax returns, constitute such corroborative information.

The Court agrees with the government that subjectivity alone does not protect these workpapers from DCAA's subpoena power. As already noted, subjective information in the form of estimates and projections is integral to the government contracting process. In addition, the estimates in these documents are readily distinguishable from the subjective results of internal audits that were denied to the DCAA in *Newport News I.* In that case, the withheld documents concerned the evaluation by NNS auditors of the performance and efficiency of the company's various departments and the auditors' conclusions and recommendations for corporate management. The audits concerned department-wide performance and did not address individual contracts. *Newport News I,* 837 F.2d at 165. Here, the information sought goes not to the company's performance in general but to projections relating to specific federal contracts. Moreover, by the company's own description, the requested workpapers contain the company's "educated guesses" about concrete matters such as expected wage rates, contract completion dates, overhead expenditures and so forth, rather than management evaluations of the company's general performance and efficiency.

The Court finds that the withheld documents may "reflect upon the accuracy of ... cost charges submitted to the government" and "assist DCAA in verifying costs charged." *Newport News II,* 862 F.2d at 469. The workpapers are within the agency's subpoena authority, thus satisfying the first prong of the test for determining if an agency's subpoena should be enforced. *See Newport News I,* 837 F.2d at 165.

It is also clear that the material requested is reasonably relevant to DCAA's inquiry. The agency is properly concerned with verifying the information a contractor submits to the government in order to ensure accurate budgeting and planning, to identify and avert potential cost overruns and to prevent defective pricing or outright fraud in government contracts. The requested documents bear upon the accuracy and reliability of the information submitted by NNS and will be used by DCAA to corroborate the currency, accuracy and completeness of cost proposals, the costs incurred on current government contracts, and the estimates of total contract costs contained in various contract reports that are required to be submitted to the government. *See* Declaration of William J. Sharkey at 3; *see generally* Declaration of Tim W. Forrest, DCAA Resident Auditor at Newport News, at 3–15.

NNS argues that the workpapers are not necessary for DCAA to properly perform its auditing functions. The factors identified by the Fourth Circuit indicate otherwise. *Newport News II,* 862 F.2d at 470. The workpapers are in a readily usable form and have a high degree of reliability. *See* Affidavit of Nelson H. Shapiro at 7 (discussing company's obligation to provide accurate information in financial statements). The information in the workpapers may "bear upon the consistency of [NNS's] costing methods and the reconcilability of costs claimed for tax purposes and costs claimed in contract billings to the government." 862 F.2d at 470. *See* Affidavit of William J. Sharkey at 9–10. Finally, the workpapers may allow DCAA to verify the accuracy of cost information and corroborate NNS's computation and allocation of direct and indirect costs to particular government contracts. 862 F.2d at 470. *See* Affidavit of William J. Sharkey at 9–13. The documents sought are therefore relevant to DCAA's statutory auditing responsibilities.

NNS does not argue that DCAA's request for the subject materials is unduly burdensome or overbroad. Accordingly, the requirements for judicial enforcement of the agency's subpoena are met. *See Newport News I,* 837 F.2d at 165.

For the foregoing reasons, the Court GRANTS the government's petition for enforcement of DCAA's subpoena and ORDERS NNS to produce the withheld documents within ten days of the date of this Order.

The Clerk is DIRECTED to send a copy of this Order to counsel for the plaintiff and defendant.

IT IS SO ORDERED.