**NATIONAL LABOR RELATIONS BOARD, Petitioner–Appellee,**

v.

**AMERICAN MEDICAL RESPONSE, INC., Respondent–Appellant.**

**Docket No. 05–1148–CV.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 1, 2005.

Decided: Feb. 17, 2006.

Julian B. Bellenghi, Collins & Bellenghi, LLP, Irvine, CA, for Respondent–Appellant.

Laura Bandini (Margery E. Lieber, Eric G. Moskowitz, Denise F. Meiners, John E. Higgens, Jr., John H. Ferguson, on the brief), National Labor Relations Board, Washington, DC, for Petitioner–Appellee.

Before: WALKER, Chief Judge, FEINBERG and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge.

Respondent-appellant American Medical Response, Inc. ("AMR") appeals from an endorsement order of the United States District Court for the District of Connecticut (Alvin W. Thompson, J.) accepting the recommended ruling of Magistrate Judge Donna F. Martinez and requiring AMR's compliance with subpoenas duces tecum issued by petitioner-appellee National Labor Relations Board (the "Board"). We have jurisdiction under 28 U.S.C. § 1291.

In September 2003, the Board issued two subpoenas in connection with its investigation of a charge of unfair labor practices at AMR's Bridgeport, Connecticut facility. One subpoena sought documents related exclusively to the Bridgeport facility, while the other sought documents related to AMR's non-unionized facilities nationwide. AMR appeals only enforcement of the latter subpoena, arguing principally that the documents the subpoena seeks are not relevant to the Board's investigation. We disagree and affirm the district court's order.

## I. BACKGROUND

AMR is a national supplier of transportation by ambulance and attendant care to counties and municipalities in 35 states, including the area in or around Bridgeport, Connecticut. AMR, which employs paramedics and emergency medical techni-

cians ("EMTs") to staff its ambulances, has approximately 55 non-unionized facilities nationwide, including its Bridgeport facility.

On July 16, 2003, the national representative of the International Association of EMTs and Paramedics, SEIU/NAGE, AFL–CIO, (the "Union") filed a charge (the "July 16 charge") with the Board's Region 34 in Bridgeport, Connecticut, alleging certain of AMR's labor practices at its Bridgeport facility violated section 8(a)(1)-(3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1)-(3). Of particular relevance, the July 16 charge alleged that in June 2003 AMR "created a company Union (action committees)." The Union thereafter twice amended the charge, first on August 14, 2003 and then again on August 21, 2003, deleting any reference to a company union or action committees. The charge was ultimately withdrawn. Also on August 14, 2003, however, the Union filed a new charge (the "August 14 charge" or "pending charge") with Region 34, alleging that on or about April 5, 2003, AMR "offer[ed] to pay employees for participation in employee 'action teams' to improve the company" in violation of section 8(a)(1)-(2) of the NLRA. The August 14 charge remains pending.

Region 34 commenced an investigation of the August 14 charge and learned the following. The Union began an organizing campaign in January 2003 at AMR's Bridgeport facility. Subsequently, AMR's Bridgeport management convened a series of meetings with its employees. At one of these meetings in April 2003, AMR announced its plans to establish "action teams" at all of its non-unionized facilities, including Bridgeport. According to the Board, AMR told its employees that the action teams were to be "committees composed of supervisory and rank-and-file employees, whose purpose would be to discuss and develop improvements on a range of issues, such as employee safety and cash incentive awards." Petr.'s Br. 4. At that same meeting, AMR informed employees that they would receive additional compensation for serving on the action teams, as the Union's August 14 charge alleged. AMR developed an "Action Teams Guide," which it distributed to managers at all of its non-unionized facilities nationwide. AMR then implemented action teams at its non-unionized facilities in June 2003, including its Bridgeport facility where there were three such teams.

To further its investigation, Region 34 served two investigatory subpoenas duces tecum on AMR in September 2003 pursuant to its authority under section 11(1) of the NLRA.[1] The first subpoena sought 15 categories of documents related to AMR's implementation and operation of action teams at its Bridgeport facility ("Bridgeport subpoena"); the second sought 16 categories of documents related to AMR's implementation and operation of action teams at all other AMR facilities in the United States ("U.S. Facilities subpoena"). The Board's General Counsel subsequently limited the scope of the U.S. Facilities

---

1. Section 11(1) of the NLRA provides, in relevant part:

 The Board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The Board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subp[o]enas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application.

 29 U.S.C. § 161(1).

subpoena to AMR's non-unionized facilities.

AMR filed a petition with the Board to revoke the subpoenas. A three-member panel of the Board unanimously denied the petition. Following the denial of its petition, AMR did produce certain documents responsive to the Bridgeport subpoena, but never produced any documents responsive to the U.S. Facilities subpoena. Accordingly, pursuant to section 11(2) of the NLRA,[2] the Board filed an application with the United States District Court for the District of Connecticut for an order enforcing both subpoenas.[3]

The district court referred the application to the magistrate judge for a recommended ruling, and the magistrate judge recommended that the Board's application be granted as to both subpoenas. See *NLRB v. Am. Med. Response, Inc.*, No. 3:04–MC–00067 (AWT) (D.Conn. Nov. 3, 2004) (magistrate judge's recommended ruling). AMR filed written objections to the magistrate judge's report, but objected only to enforcement of the U.S. Facilities subpoena. The district court accepted the magistrate judge's recommended ruling and ordered AMR's compliance with both subpoenas. See *NLRB v. Am. Med. Response, Inc.*, No. 3:04–MC–00067 (AWT) (D.Conn. Jan. 19, 2005) (endorsement order). AMR now appeals from that order, but only as to enforcement of the U.S. Facilities subpoena; AMR does not appeal enforcement of the Bridgeport subpoena.

## II. DISCUSSION

The NLRA entitles the Board to subpoena "any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question." 29 U.S.C. § 161(1). This subpoena power is "indispensable to the carrying out of [the Board's] functions," *Pedersen v. NLRB*, 234 F.2d 417, 420 (2d Cir.1956), which include the investigation, prosecution, and prevention of unfair labor practices, see 29 U.S.C. § 160.

 Enforcement of the Board's subpoenas is left to the courts, 29 U.S.C. § 161(2), but "[t]he courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *In re McVane*, 44 F.3d 1127, 1135 (2d Cir.1995) (internal quotation marks omitted). An agency must show only " '[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry *may be* relevant to the purpose, [3] that the information sought is not already within [its] possession, and [4] that the administrative steps required . . . have been followed . . . .' " *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96 (2d Cir.1997) (emphasis added) (quoting *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)); see also *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950) ("[I]t is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant."). A subpoena that satisfies these criteria will be enforced un-

---

**2.** Section 11(2) of the NLRA provides, in relevant part:

> In case of . . . refusal to obey a subp[o]ena issued to any person, any district court of the United States . . ., within the jurisdiction of which the inquiry is carried on . . ., upon application by the Board shall have jurisdiction to issue to such person an order requiring such person to appear before the

Board, its member, agent, or agency, there to produce evidence if so ordered . . . .

29 U.S.C. § 161(2).

**3.** The Board apparently sought enforcement of the Bridgeport subpoena because it believed the documents produced by AMR had not been fully responsive.

less the party opposing enforcement demonstrates that the subpoena is unreasonable, or issued in bad faith or for other improper purposes, "or that compliance would be *'unnecessarily* burdensome.'" *RNR Enters., Inc.*, 122 F.3d at 97 (quoting *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir.1973)).

█ AMR primarily contends that the Board has failed to show that its "inquiry may be relevant to [its] purpose," that is, that the documents sought by the U.S. Facilities subpoena may be relevant to the Board's investigation of the August 14 charge.[4] In enforcing administrative subpoenas, courts broadly interpret relevancy, see *In re McVane*, 44 F.3d at 1136, and "[t]he relevance of the sought-after information is measured against the general purposes of the agency's investigation, which necessarily presupposes an inquiry into the permissible range of investigation under the statute," *id.* at 1135 (internal quotation marks omitted). The district court defers to "the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong," *id.* (internal quotation marks omitted), and, in turn, we affirm a district court's finding of relevancy unless that determination is clearly erroneous, *id.*

The magistrate judge and the district court accepted the Board's contention that its investigation included the propriety of the action teams, as implemented nationally by AMR, and found that the documents sought by the U.S. Facilities subpoena are relevant to that purpose.

AMR argues primarily that only AMR's "offer to pay employees for participation in employee 'action teams' to improve the company"—as alleged in the August 14 charge—is under investigation, not the action teams themselves, and thus, the operation of action teams at other facilities is irrelevant to the investigation of that conduct. AMR apparently reasons that the Union's amendments to (and subsequent withdrawal of) its July 16 charge, thereby deleting the specific allegation in that charge that AMR had violated the NLRA by "creat[ing] a company Union (action committees)," operate as a concession that the action teams do not violate section 8(a)(2). Thus, according to AMR, the Board's investigation of the action teams themselves, if allowed, impermissibly initiates an investigation on the Board's own motion.

█ As a preliminary matter, there is no logic in construing the Union's amendments to and later withdrawal of its July 16 charge as a concession that the action teams are proper. On the day the Union first amended its July 16 charge to delete any reference to the action teams, it simultaneously filed the August 14 charge, which challenges on its face the employer's conduct in connection with those same action teams, namely its offer "to pay employees for participation in employee '*action teams*' to improve the company" (emphasis added).

More importantly, while AMR is correct that the Board may not initiate an investi-

---

4. AMR initially argued to the district court and in its briefs to this Court on appeal that the U.S. Facilities subpoena should be quashed for the additional reason that compliance would be "unduly burdensome." But "'courts have refused to modify investigative subpoenas unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business.'" *FTC v. Rockefeller*, 591 F.2d 182, 190 (2d Cir.1979) (quoting with approval *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C.Cir.1977) (en banc)). Under questioning at oral argument, AMR conceded that compliance with the U.S. Facilities subpoena would not disrupt its operations, Oral Arg. Tr. 6:2–3, Nov. 1, 2005, thus effectively abandoning this argument.

gation on its own motion, see 29 U.S.C. § 160(b); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 156 n. 22, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975) (charge of unfair labor practices must first be filed by a private party with the Board), the Board seeks enforcement of its subpoenas here not "to pursue a charge that was withdrawn, but rather to investigate the charge that is pending before it," Petr.'s Br. 20. The Board has endorsed the view that previously withdrawn or dismissed allegations may be added to a complaint issued on a pending charge under certain circumstances. See *Redd–I, Inc.*, 290 N.L.R.B. 1115, 1118 (1988); see also *Sonicraft, Inc. v. NLRB*, 905 F.2d 146, 148–49 (7th Cir. 1990) (applying *Redd–I*). Similarly, we see no way in which the amendment and withdrawal of an earlier charge challenging the action teams could limit the Board's investigatory powers with regard to the pending charge here, particularly given the explicit reference in the pending charge to action teams.

As to that pending charge, the documents sought are relevant for two reasons. First, the Board's investigation of the pending charge clearly requires its investigation of AMR's Bridgeport action teams, and the documents sought are relevant to that purpose. Second, the Board may extend its investigation of the pending charge to AMR's action teams, regardless of location, as a "closely related" matter, and the documents sought are also relevant to that purpose.

■ As to the first reason why the documents sought by the U.S. Facilities subpoena are relevant, it is clear that AMR's Bridgeport action teams, and not just the offer of compensation alleged in the August 14 charge, are properly a "matter under investigation." The Union's August 14 charge alleges that AMR violated the NLRA at its Bridgeport facility by "offer-ing to pay employees for participation in employee 'action teams' to improve the company" (emphasis added). Under section 8(a)(2) of the NLRA it is unlawful for an employer to "dominate or interfere with the formation or administration of any *labor organization* or to contribute financial or other support to it." 29 U.S.C. § 158(a)(2) (emphasis added). "Labor organization," in turn, is defined at section 2(5) of the NLRA, id. § 152(5). Board caselaw confirms what is self-evident from the statute: "Before a finding of unlawful domination can be made under Section 8(a)(2) a finding of 'labor organization' status under Section 2(5) is required." *Electromation, Inc.*, 309 N.L.R.B. 990, 994 (1992), enforced, 35 F.3d 1148 (7th Cir. 1994). Thus, an investigation of whether an alleged offer to pay employees for their participation in the Bridgeport action teams violates section 8(a)(2) necessarily encompasses investigation of the Bridgeport action teams themselves to resolve the prior issue of whether they are "labor organizations" at all.

The documents sought by the U.S. Facilities subpoena are clearly relevant to that investigation. Determination of whether an entity is a "labor organization" within the meaning of section 2(5) of the NLRA requires examination of "whether employees participate; whether the entity in question addresses grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work; and whether it has a purpose, in whole or in part, of dealing with the employer about the foregoing subject matters." *Keeler Brass Auto. Group*, 317 N.L.R.B. 1110, 1113 (1995) (internal quotation marks omitted). While this is, as AMR contends, a fact-specific inquiry, AMR has implemented its action teams pursuant to a uniform, nationwide scheme. It is reasonable to expect that the operation of action teams

at other AMR facilities pursuant to that scheme may shed light on the operation of the Bridgeport action teams and, in turn, aid the Board's investigation of whether they are "labor organizations."

■ The second reason why the documents sought by the U.S. Facilities subpoena are relevant is that a charge "'serves merely to set in motion the investigatory machinery of the Board.'" *NLRB v. H.P. Townsend Mfg. Co.,* 101 F.3d 292, 294 (2d Cir.1996) (quoting *Texas Indus., Inc. v. NLRB,* 336 F.2d 128, 132 (5th Cir.1964)). In carrying out its investigation, the Board is not "left *carte blanche* to expand the charge as [it] might please, or to ignore [the charge] altogether." *NLRB v. Fant Milling Co.,* 360 U.S. 301, 309, 79 S.Ct. 1179, 3 L.Ed.2d 1243 (1959) (internal quotation marks omitted). But because "[t]he Board was created not to adjudicate private controversies but to advance the public interest" neither is the Board confined "in its inquiry and in framing the complaint to the specific matters alleged in the charge." *Id.* at 307–08, 79 S.Ct. 1179. In issuing a complaint, the Board may properly include certain allegations "closely related" to the original charge. *NLRB v. Jack La Lanne Mgmt. Corp.,* 539 F.2d 292, 295 & n. 1 (2d Cir. 1976) ("[W]e have long permitted the Board to amend the complaint and to add charges ... if such additions are 'closely related' to the original charge."); *NLRB v. Dinion Coil Co.,* 201 F.2d 484, 491 (2d Cir.1952). It follows that the Board's investigation may permissibly extend to certain "closely related" matters that may become the subject of its complaint.

■ We have little difficulty concluding that AMR's conduct generally with regard to its Bridgeport action teams may be a matter "closely related" to its offer of compensation. This conduct may similarly raise the possibility of unlawful "domi-

nat[ion] or interfere[nce] with the formation or administration of any labor organization" in violation of section 8(a)(2) of the NLRA. And because AMR's action teams are operated pursuant to a national scheme, AMR's conduct generally with regard to its action teams at other facilities may also be "closely related." The documents sought by the U.S. Facilities subpoena are therefore relevant for the further reason that they may shed light on the legality of AMR's action teams, a subject within the scope of the investigation authorized by the August 14 charge.

In sum, we have considered all of AMR's arguments and they do not warrant disturbing the district court's enforcement.

### III. CONCLUSION

The order of the district court is AFFIRMED.