EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

ALLIANCE RESIDENTIAL
COMPANY, Respondent.

Miscellaneous Action No.
5:11–MC–638–FB.

United States District Court,
W.D. Texas,
San Antonio Division.

Nov. 18, 2011.

decision in *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011)).

Edward Juarez, U.S. Equal Employment Opportunity Commission San Antonio Field Office, San Antonio, TX, for Plaintiff.

Lawrence D. Smith, Sona Ramirez, Ogletree Deakins Nash Smoak & Stewart, PC, San Antonio, TX, for Respondent.

## ORDER CONCERNING PLAINTIFF'S APPLICATION TO ENFORCE ADMINISTRATIVE SUBPOENA

FRED BIERY, Chief Judge.

Before this Court are Plaintiff's Application to Enforce Administrative Subpoena (docket # 1), Respondent's Response and Objections to Plaintiff's Application (docket # 3), Plaintiff's Reply to Respondent's Response (docket # 5), and Respondent's Advisory to the Court in Support of Response to Plaintiff's Application (docket # 6). Plaintiff seeks an order directing respondent to comply with the subpoena and requests an award of costs incurred in the prosecution of this Application.[1] For the following reasons, Plaintiff's Application to Enforce Administrative Subpoena (docket # 1) is GRANTED.

### I. Background

Plaintiff, the United States Equal Employment Opportunity Commission (hereinafter "EEOC" or the "Commission")

seeks enforcement of an administrative subpoena *duces tecum* issued by the EEOC in conjunction with an Americans with Disabilities Act (hereinafter "ADA") investigation. The employer at the center of the ADA investigation is respondent, Alliance Residential Company (hereinafter "Alliance"). Alliance is a property management company with over 1,400 employees based out of 16 branch offices in 14 states around the United States. (Declaration of Kimberley Viraco, Alliance Human Resources Director, attached as Exhibit A to Respondent's Response and Objections to Plaintiff's Application.)

A former Alliance employee, Monica Laurel, worked at an Alliance apartment complex in San Antonio, Texas and took leave under the Family and Medical Leave Act (hereinafter "FMLA") because she suffered from a spinal impairment. The impairment affected her neurological function, body movement, and lifting ability. (Plaintiff's Application to Enforce Administrative Subpoena at page 2–3.) Ms. Laurel was terminated on December 8, 2009. *Id.* On December 22, 2009, Ms. Laurel filed a charge of discrimination with the EEOC alleging Alliance discharged her in violation of the ADA,[2] and the EEOC commenced an investigation. *Id.*

---

1. Plaintiff's Application to Enforce Administrative Subpoena (docket # 1) also requests this Court to issue an Order to Show Cause directing respondent to appear to show cause why an order should not be issued directing respondent to comply with plaintiff's subpoena. Because respondent has already submitted a Response to Plaintiff's Application (docket # 3) as well as an Advisory to the Court (docket # 6), Plaintiff's request for an Order to Show Cause is DENIED as moot. Plaintiff also requests a hearing. Because the Court has already received sufficient briefing on this matter, plaintiff's request for a hearing is DENIED.

2. Specifically the charge states:

On December 8, 2009, I received a phone call from Katie Daugs, Human Resource Generalist. During this phone call, Ms. Daugs advised me that if I was not released by my physician to return to work that day, the Respondent would terminate my employment because my FMLA had expired. I attempted to explain to her that this was not true, and that my FMLA did not begin until November 5, 2009. She disagreed and repeated that I would be terminated from my position. On December 17, 2009, I received a letter dated December 4, 2009, from Ms. Daugs which states that my employment was terminated on December 8, 2009, because my FMLA had expired. I

Alliance contends Ms. Laurel was terminated pursuant to a company-wide policy for medical reasons due to her inability to return to work after exhausting her allotted twelve weeks of FMLA. As part of the investigation, Alliance submitted to the Commission a list of approximately 29 terminations executed in 2009–2010 pursuant to this policy. Alliance did not include employee names or contact information in this list. On April 1, 2010 the EEOC requested additional information and records from Alliance. In response, on April 26, 2010, Alliance provided a "spreadsheet showing statistics for Alliance Residential from 2007 to current that shows how many Associates [were] voluntarily resigned for not returning from an FMLA leave of Absence, a Workers Compensation Leave of Absence or for not being eligible for FMLA." The spreadsheet listed approximately 89 terminations but did not include employee names or contact information. In conjunction with this spreadsheet, Alliance included a letter explaining the company-wide policy of "voluntarily resign[ing] each Associate for medical reasons three days after an Associate's FMLA leave has been exhausted if they do not return to work or are still under a physician's care that leaves them unable to return to work." (Alliance Letter dated April 26, 2010, attached as Exhibit 5 to Plaintiff's Application to Enforce an Administrative Subpoena.) It explained this policy has been "consistently applied," and "no Associate has ever been granted additional time off." *Id.*

On June 29, 2010, the EEOC requested more information regarding the 89 employees contained in the spreadsheet, including their names, positions, disability or medical situation, social security number, and contact information.[3] The EEOC also requested the same information for all other individuals company-wide who exhausted leave for medical reasons from the time period May 1, 2009 to the then-present date as well as those individuals' employment statuses. On November 29, 2010, the EEOC received from Alliance the names and addresses of five former Alliance employees terminated for not returning after their FMLA leave was exhausted from the time period six months before and six months after Ms. Laurel's termination.

On December 1, 2010 and December 2, 2010, the EEOC served Alliance and its attorney with subpoenas[4] making the following demands:

1. You included in your April 26, 2010, response to the Commission's April 1, 2010, Request for Information a document entitled, "Voluntary Resignation Statistics re: No return from FMLA/WC LOA or ineligible for FMLA." For each employment separation you cited in this document, provide the following:

   a. name and position title of the employees

   b. disability and/or medical situation which required the leave

   c. employee's social security number

believe that I have been discriminated against in violation of the Americans with Disabilities Act of 1990.
(Charge of Discrimination, attached as Exhibit 1 to Plaintiff's Application to Enforce Administrative Subpoena.)

3. The EEOC contends social security numbers are essential to enable the EEOC to obtain current contact information where the home

addresses and telephone numbers on file are outdated.

4. Two subpoenas were served on Alliance. One was addressed to Lawrence Smith, Alliance's attorney, and the other one was addressed to Katie Daugs, Alliance's human resources official.

d. employee's last known home address and phone number

e. Fully explain reason for separation (for example, if you indicated "ineligible for FMLA" why was the employee ineligible for FMLA; not enough tenure, etc.)

2. If not included in your April 26, 2010, response, provide the same information requested above (item (a) though (e)) for all other individuals company-wide who have exhausted leave for medical reasons from the time period Jan. 1, 2009–the present date. Also indicate the employment status for these individual(s). If termination, indicate termination date and reason(s) for termination.

(Exhibit 13 to the Affidavit of Sheila Ward–Reyes.)

Alliance filed a Petition to Modify or Revoke the Subpoena, arguing: (1) the subpoena seeks information which is not relevant; (2) the subpoena constitutes harassment; (3) the subpoena seeks information which would invade the privacy of individuals who have no connection whatsoever to this matter; (4) the subpoena is unduly burdensome and is over-broad; and (5) the EEOC failed to follow its own procedures by not explaining why the information was required and how it was relevant to the Charge as outlined in Section 24.1(a) of the EEOC Compliance Manual. On May 12, 2011, the EEOC issued a determination denying Alliance's request for modification or revocation of the subpoena and ordered Alliance to produce the information sought within ten days of the determination, but to date Alliance has not produced the requested information. The EEOC now seeks judicial enforcement of the administrative subpoena.

## II. Analysis

The EEOC is empowered to investigate charges of disability discrimination to determine whether there is reasonable cause to believe an employer has engaged in an unlawful employment practice. 42 U.S.C. §§ 2000e–5(b), 12117(a). Charges of employment practices in violation of the ADA may be filed by an aggrieved individual or by a member of the EEOC. 42 U.S.C. § 2000e–5(b). In investigating a discrimination charge, the EEOC has a "broad right of access to relevant evidence." *Univ. of Pa. v. EEOC,* 493 U.S. 182, 191, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). Specifically, the EEOC is granted access to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [the ADA] and is relevant to the charge under investigation." 42 U.S.C. § 2000e–8(a). The EEOC has the authority to issue administrative subpoenas to obtain this evidence and may also request judicial enforcement of subpoenas. 42 U.S.C. § 2000e–9. In determining whether to enforce the EEOC's subpoena, this Court considers: (1) whether the information requested is relevant, (2) whether the requests are burdensome or harassing, and (3) whether privacy or confidentiality concerns prohibit the subpoena of personal, confidential or medical information.[5]

---

**5.** It is arguable another issue before this Court is whether the EEOC failed to comply with its own investigation procedures. In its Petition to Revoke and/or Modify the EEOC's Subpoena, Alliance argued the EEOC failed to follow its own procedures under Section 24.1(a) of the EEOC Compliance Manual by not explaining why the requested information was required and how it was relevant to the charge. Section 24.1(a) instructs the EEOC to "[e]xplain why the data is required, unless this would adversely affect the investigation." Although Alliance made this objection in its administrative Petition to Revoke and/or Modify the EEOC's subpoena, it does not raise the objection in Respondent's Response and Ob-

## A. Whether the Information Requested is Relevant

■ The first issue before the Court is whether the information regarding other employees terminated under Alliance's company-wide medical leave policy is relevant to Ms. Laurel's charge or if, as Alliance asserts, the request is over-broad. Where the information sought to be obtained by an administrative subpoena is not material or relevant to the issues presented in a given case, the subpoena should not be judicially enforced. *EEOC v. Shell Oil Co.*, 466 U.S. 54, 64, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984); *EEOC v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209, 211 (5th Cir.2001). The Court of Appeals for the Fifth Circuit has stated relevancy in the investigatory stage "is to be interpreted expansively." *New Orleans S.S. Ass'n v. EEOC*, 680 F.2d 23, 26 (5th Cir. 1982).[6]

The EEOC contends the information sought in the administrative subpoena will enable the EEOC to determine if Ms. Laurel and other employees were subjected to disability discrimination, emphasizing the EEOC is afforded access to "virtually any material that might cast light on the allegations." *See Shell Oil Co.*, 466 U.S. at 68–69, 104 S.Ct. 1621. According to the

Commission, Alliance may have violated the ADA by summarily terminating employees upon their exhaustion of FMLA leave pursuant to company-wide policy, without consideration given to the ADA's prohibition of discharging individuals because of disability as well as the ADA's "reasonable accommodation" and "individualized assessment" requirements. Ms. Laurel's charge did not make reference to discrimination against other employees, but the EEOC argues the allegations contained in a charge do not narrowly circumscribe the EEOC's investigation. Rather, the EEOC asserts the charge serves as "a jurisdictional springboard" enabling the Commission "to investigate whether the employer is engaged in any discriminatory practices." *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir.1975). According to the EEOC, the charge in this case is capable of supporting an EEOC investigation into both the discrimination described in the charge itself and into the surrounding circumstances, including a full probing of any evidence of discriminatory practices unearthed during the course of the initial investigation. Courts in other jurisdictions have held information pertaining to company-wide discrimination was relevant to an individual charge of discrimination.[7]

jections to Plaintiff's Application (docket # 3) before this Court. Had Alliance raised this objection before this Court, the Court would find it without merit, as the Compliance Manual grants the EEOC a significant amount of discretion by allowing the EEOC to avoid explaining why data is required if it "would adversely affect the investigation." This conclusion is supported by the lack of any case law in which a federal court refused to enforce an EEOC subpoena for failure to comply with this provision of Section 24.1.

6. Other circuits have similarly held notions of relevancy at the investigatory stage are broad. *See EEOC v. Recruit U.S.A., Inc.*, 939 F.2d 746, 756 (9th Cir.1991); *EEOC v. Cambridge*

*Tile Mfg.* Co., 590 F.2d 205, 206 (6th Cir. 1979).

7. *EEOC v. Schwan's Home Serv.*, 644 F.3d 742, 748 (8th Cir.2011) (where the EEOC's investigation of an individual gender discrimination charge revealed potential systemic gender discrimination, "the EEOC had the authority to subpoena information relevant to systemic gender discrimination"); *EEOC v. Kronos Inc.*, 620 F.3d 287, 298–299 (3rd Cir. 2010) (nationwide information could provide "useful context" and important comparative data and was therefore relevant to the individual charge at issue.); *EEOC v. United Parcel Service, Inc.*, 587 F.3d 136, 139–40 (2nd Cir. 2009) (enforcing subpoena for nationwide

Alliance argues the information sought by the EEOC is irrelevant because it pertains to the leave and medical issues of employees company-wide who are not parties to the charge. Alliance points out the relevancy limitation should not be construed "in a fashion that renders that requirement a nullity." *Shell Oil Co.*, 466 U.S. at 68–69, 104 S.Ct. 1621. According to Alliance, the EEOC's request constitutes the type of impermissible "fishing expedition" against which the relevancy requirement was designed to protect. *See EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir.2002). Alliance argues Ms. Laurel's charge does not allege any practice or pattern of terminating disabled workers and the EEOC is simply looking for discovery for a potential class action against Alliance related to other former employees. Courts in other jurisdictions have held information pertaining to company-wide discrimination was not relevant to an individual charge of discrimination.[8]

As shown, other jurisdictions have reached opposite conclusions on the issue of whether company-wide information is relevant to an individual charge of discrimination. This Court must focus on Fifth Circuit precedent. In *Georgia Power Company v. EEOC*, the charging party alleged a company refused to hire her on the basis of race and sex. 412 F.2d 462, 468 (5th Cir.1969). In the course of its investigation of the alleged discrimination, the EEOC required the company to supply a list of the names, race, and sex of other job applicants. *Id.* The company argued the only relevant data were the records pertaining to charging party and the individual who was hired in preference to her. *Id.* The Fifth Circuit concluded the information pertaining to other job applicants was "clearly relevant to the charge under investigation," reasoning as follows:

> Discrimination on the basis of race or sex is class discrimination. The EEOC cannot reasonably be expected to discern such discrimination by examining data relating to two individuals.... To limit the investigation to a single position would in many, if not most, instances severely restrict comparative study of the charged party's hiring practices. Thus we think it clear that information concerning other positions is relevant to the investigation.

*Id.* This reasoning suggests the EEOC should be permitted to obtain information regarding other Alliance employees in the case at bar.

In another Fifth Circuit case, *EEOC v. Packard Electric Division*, three individual employees filed EEOC charges alleging race and sex discrimination. 569 F.2d 315, 317 (5th Cir.1978). The EEOC issued investigative subpoenas for broad statistical information, including the complete compa-

---

and company-wide identifying information for all employees who were not hired or were terminated pursuant to company-wide policy based on two individual charges of discrimination).

8. *EEOC v. Loyola Univ. Med. Ctr.*, No. 11C4456, 823 F.Supp.2d 835, 838–39, 2011 WL 4888900, at *3–4(N.D.Ill. Oct. 13, 2011) (holding medical records of other employees were not relevant to individual employee's charge she was given medical exam by her employer for improper purpose); *EEOC v. Randstad*, 765 F.Supp.2d 734, 741–742

(D.Md.2011) (holding company-wide information for all placements over five-year period was irrelevant to the individual's charge of national origin discrimination); *EEOC v. UPMC*, No. 2:11–mc–121, 2011 WL 2118274, at *3–4 (E.D.Pa. May 24, 2011)(holding company-wide information concerning individuals who were terminated after 14 weeks of medical leave was irrelevant to individual's charge she was "discharged because [she] did not return back to work on time from short-term disability" and finding EEOC could bring a commissioner's charge to subpoena such information).

ny personnel list as well as every employee's race, sex, job classification, labor grade, date of hire, and pay rate. *Id.* at 316. The district court enforced only part of the subpoena, limiting compliance to a specific department within the company. *Id.* The Fifth Circuit affirmed this limited enforcement. *Id.* Importantly, the court found this holding left it "open to the EEOC to show, if it can, the relevance of the plant-wide workforce [information] at some later stage in its investigation." *Id.* at 318. In other words, the court noted it was possible for the EEOC to commence an investigation of an individual charge and then later show company-wide information would be relevant to the charge. The court wrote, "[i]n the context of an investigation of an individual complaint, ... the EEOC might well need a wide spectrum of statistical data in order to illuminate the general policies bearing on the complainant's situation." *Id.*

▮ While the EEOC in *Packard* had not yet demonstrated the relevance of company-wide information, here, the relevance of this type of information was demonstrated by Alliance's admission Ms. Laurel was terminated pursuant to a company-wide medical leave policy. The case at bar appears to be precisely the type of case in which later investigation reveals that a wider spectrum of data could "illuminate the general policies bearing on the complainant's situation" as envisioned by the Fifth Circuit in *Packard*. *Id.* For the foregoing reasons, the Court concludes the information sought in the EEOC's subpoena is relevant to Ms. Laurel's charge. This conclusion is consistent with the Supreme Court's reading of the relevancy requirement as "not especially constraining." *Shell Oil Co.,* 466 U.S. at 68–69, 104 S.Ct. 1621.

Alliance contends the EEOC could have issued a commissioner's charge, which would arguably cover the information it now seeks. Indeed, an ADA discrimination charge may be filed by an aggrieved individual or by a member of the EEOC. 42 U.S.C. § 2000e–5(b). Without such a charge, Alliance contends the EEOC is not entitled to the company-wide information. One Fifth Circuit case provides an example of the type of information request requiring a separate commissioner's charge. In *EEOC v. Southern Farm Bureau Casualty Insurance Company,* an employee filed an EEOC charge alleging the employer company had committed race discrimination. 271 F.3d 209, 210 (5th Cir. 2001). In the course of investigating, the EEOC became concerned the company had discriminated on the basis of sex as well as race and requested information regarding the sex of the company's employees. *Id.* The Fifth Circuit held the requested information was irrelevant to the charge, which specified racial discrimination only. *Id.* at 211. It further noted "[w]hen the EEOC discovered ... possible evidence of sex discrimination ... [it] could have exercised its authority under 42 U.S.C. §§ 2000e–5(b), 2000e–6(e) to file a commissioner's charge alleging sex discrimination, thereby freeing the EEOC to demand information [regarding potential sex discrimination]." *Id.* The case before this Court today is distinguishable in that the information sought by the EEOC here pertains to the same type of discrimination alleged in the charge. Ms. Laurel alleged discrimination on the basis of disability, and the EEOC now seeks information regarding discrimination on the basis of disability. Conversely, in *Southern Farm Bureau Casualty Insurance Company,* the EEOC sought information regarding an entirely different type of discrimination than was alleged in the employee's charge. The Court concludes the EEOC need not file a separate commissioner's charge alleging systematic company-wide discrimi-

nation in order to obtain the company-wide information sought here.

### B. Whether the Requests are Burdensome or Harassing

■ The next issues before the Court are whether the requests present an undue burden to Alliance and whether the requests were made for the purpose of harassment, as Alliance contends. Few Fifth Circuit cases have addressed when an EEOC subpoena is burdensome. *New Orleans S.S. Ass'n v. EEOC*, 680 F.2d 23, 26 (5th Cir.1982) (in a case where employees alleged discriminatory hiring, a subpoena demanding the name, race, and gender of the job applicants who had taken a hiring exam was not overly burdensome). Other jurisdictions have explained an administrative subpoena presents an undue burden when " 'compliance would threaten the normal operation of a respondent's business.' " *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir.2002). If a subpoena imposes a significant financial and administrative burden on the respondent, and there is only a tangential need for the information, the subpoena should

not be enforced. *See id.* at 654–655. Respondents carry a "difficult burden of showing that the demands of a subpoena are unduly burdensome." [9] *EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 371 (7th Cir.2011) (holding company did not meet this burden when it merely alleged it would have to obtain, organize, and produce the materials requested in the subpoena).

■ The EEOC concedes compliance with the subpoena will be inconvenient for Alliance, but contends Alliance cannot meet its "difficult burden" of showing compliance is burdensome. On the other hand, Alliance argues the subpoena would require Alliance to manually review personnel files, which it alleges would entail hundreds of hours of work. The manual review of personnel files does not rise to the level of an undue burden. Alliance also contends compliance with the subpoena would require it to locate and interview employees who no longer work for Alliance. The EEOC does not have authority to require the production of information over which Alliance has no control.[10]

---

9. *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 648 (7th Cir.1995) (holding company failed to meet its burden of establishing compliance with the EEOC subpoena would threaten its normal business operations even when it presented an affidavit averring it would cost over 200,000 employee-hours to comply with the EEOC subpoena); *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993) (holding employer failed to establish request was unduly burdensome where employer only showed compliance would be inconvenient and involve some expense but did not offer any specific estimate of cost or show how compliance would impact normal operations of employer); *EEOC v. Md. Cup Corp.*, 785 F.2d 471, 479 (4th Cir.1986) (holding EEOC's request was not unduly burdensome where company was required to inspect photos and interview employees in order to ascertain the race of former employees, even though compliance would cost $75,000).

10. A company cannot be required by the EEOC to "obtain information that the company does not control." *Quad/Graphics, Inc.*, 63 F.3d at 649 (holding respondent would not be required to interview unsuccessful applicants over whom it no longer had control). However, this does not mean the EEOC may not compel an employer to compile information within its control in order to respond to a subpoena, as "the subpoena power of the EEOC is not limited to the production of documents already in existence." *Citicorp Diners Club, Inc.*, 985 F.2d at 1039 (rejecting respondent's argument compliance with subpoena would require it to interview past employees because subpoena spoke in terms documents, not in terms of interviewing employees); *Md. Cup Corp.*, 785 F.2d at 479 (enforcing subpoena demanding extensive documentary information regarding former employees, but noting company was not required to "interview former supervisors who are no longer employed by the company, be-

Therefore, to the extent compliance with the administrative subpoena requires Alliance to interview former employees over whom Alliance has no control or to whom Alliance has no access, that element of compliance is unduly burdensome. The EEOC may still require Alliance to compile information over which it does have control. This may include review of personnel files or interviews with current employees, among other things.

### 1. There is no Showing EEOC Acted Improperly or in Bad Faith

■■ Alliance also alleges the EEOC's subpoena was issued for the purpose of harassment. In light of "the broad investigative powers of the EEOC," parties alleging an administrative subpoena is harassing must demonstrate a "strong showing of bad faith or improper behavior." *EEOC v. Roadway Express, Inc.*, No. H–78–73, 1978 WL 160, at *5 (S.D.Tex. Dec. 6, 1978). Alliance asserts the request constitutes harassment because the EEOC already has the information sufficient upon which to render a decision on Ms. Laurel's claims. The Court finds this argument insufficient to demonstrate a strong showing of bad faith. Therefore, Alliance has failed to establish the subpoena was issued for the purpose of harassment.

### C. Whether Privacy or Confidentiality Concerns Prohibit the Subpoena of Personal, Confidential or Medical Information Requested

■ The final issue before the Court is whether privacy or confidentiality concerns prohibit the subpoena of personal, confidential or medical information. Alliance objects to the subpoena on the basis the

request for former employees' social security numbers and health information is private information not available to the general public. The Supreme Court and lower courts have rejected confidentiality arguments as a defense to an administrative subpoena. *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 604, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981) (holding defendant did not have "a categorical right to refuse to comply with the EEOC subpoena unless the Commission assured it that the information supplied would be held in absolute secrecy," but noting each charging party could only see information in his or her own file); *Univ. of Pa. v. EEOC*, 493 U.S. 182, 192, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (concluding confidentiality of academic peer review materials did not justify noncompliance with administrative subpoena); *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir.1981) ("confidentiality is no excuse for noncompliance"); *EEOC v. Univ. of N.M.*, 504 F.2d 1296, 1303 (10th Cir.1974) (requiring compliance even where personnel files and records were "both confidential and extremely sensitive").

The EEOC contends any legitimate concerns Alliance has regarding confidentiality are already appropriately addressed under the law governing EEOC investigations. It argues 42 U.S.C. § 2000e–5(b) prohibits the EEOC from making public charges of discrimination and imposes fines and imprisonment for anyone violating this rule of confidentiality. In addition, Section 2000e–8(e) prohibits the disclosure of any information obtained pursuant to the EEOC's investigatory powers.[11]

---

cause the company no longer has access to or control over these persons").

**11.** The EEOC also argues confidentiality would still be protected even if a Freedom of

Information Act ("FOIA") request is made after the investigation is closed because FOIA contains exceptions for information that could reasonably be expected to constitute an unwarranted invasion of privacy. FOIA ex-

The Supreme Court has explained the relationship between these statutory safeguards and confidentiality concerns:

> Congress apparently considered the issue of confidentiality, and it provided a modicum of protection [Section 2000e–8(e)]. Petitioner urges us to go further than Congress thought necessary to safeguard that value, that is, to strike the balance differently from the one Congress adopted. Petitioner, however, does not offer any persuasive justification for that suggestion.

*Univ. of Pa.,* 493 U.S. at 192, 107 L.Ed.2d 571. The Court acknowledges the sensitivity of some of the information requested by the EEOC, specifically the medical information and social security numbers of former employees. To that end, the court notes the charging party, Ms. Laurel, is entitled to "see information in no file other than . . . her own." *Associated Dry Goods Corp.,* 449 U.S. at 604, 66 L.Ed.2d 762. Other than this protection, the Court concludes the statutory safeguards already in place are sufficient to protect the medical and social security information requested by the EEOC.

### III. Conclusion

For the foregoing reasons, Plaintiff's Application to Enforce Administrative Subpoena (docket # 1) is GRANTED.

It is so ORDERED.

emption 6 permits the EEOC to withhold information about individuals in "personnel and medical files" if its disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This includes medical information, contact information, social security numbers, and the reason(s) an individual left employment. Additionally, FOIA exemption 7(c) authorizes the EEOC to withhold information where the production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c). This exemption protects from public disclosure information such as medical information, social security numbers, dates of birth, and contact information.